# City Court.

*Trial Term—November*, 1883.

## LIZZIE HANNON, an Infant, &c., *against* JOHN T. AGNEW, et al.

**Brooklyn bridge disaster.—Liability of public officers.**—While it is true that when an individual sustains an injury by the mis-feas-

ance or non-feasance of a public officer who omits to act, or acts contrary to his duty, the law gives redress by an appropriate action; yet public officers are not liable for the misconduct or malfeasance of such persons, as they are obliged to employ, the maxim respondeat superior, having no application to such officials. Where an accident happened upon a public bridge caused by a panic among the crowd who were travelling upon it. *Held*, that the trustees not being guilty of any act of personal neglect, were not liable.

Plaintiff sought to hold the trustees of the Brooklyn bridge personally responsible for damages for injuries sustained by her on the occasion of the disaster upon the bridge on Decoration day. Defendants moved to dismiss the complaint, which was granted.

*James M. Lyddy*, for plaintiff.

*Bergen & Dyckman* and *A. J. Vanderpoel*, for defendants.

McADAM, J.—While it is true that when an individual sustains an injury by the mis-feasance or non-feasance of a public officer, who omits to act, or acts contrary to his duty, the law gives redress to the injured party by an appropriate action (Adsit *v*. Brady, 4 *Hill*, 630 ; Shepherd *v*. Lincoln, 17 *Wend*. 250 ; Smith *v*. Wright, 24 *Barb*. 306 ; Robinson *v*. Chamberlin, 34 *N. Y.* 391 ; Hover *v*. Barkhoof, 44 *Id*. 122 ; Connors *v*. Adams, 13 *Hun*, 429), yet public officers are not liable for the misconduct or malfeasance of such persons as they are obliged to employ, the maxim respondeat superior having no application to such officials (Murphy *v*. Commissioners, 28 *N. Y.* 134 ; Donovan *v*. McAlpin, 85 *Id*. 185, 1 *Dillon on Mun. Corp.* 298, note). In other words, public officers while liable to a civil action for willful and capricious omission of duty resulting in injury to the party complaining, are not liable for mere neglect not personal. In the present

Hannon v. Agnew.

case no personal neglect has been proven against any of the defendants. The negligence charged against the defendants consists—

First. In allowing the bridge under their management to be overcrowded on the day the accident occurred.

The evidence proves that there were 87,000 people upon it on the day of the accident, and that 183,000 had crossed it in safety on a previous day ; that the arrangements were alike on both days.

Second. In not appointing an adequate police force as required by the act under which the defendants were appointed.

The superintendent, by and with the approval of the chairman of the committee on organization appointed by the board of trustees, selected and appointed what they regarded as an adequate police force, which proved sufficient on all occasions prior to the one on which the plaintiff received her injuries. The evidence fails to show that the alleged irregularity of such appointment in any way contributed to the accident, or that it would have been avoided if double the force had been appointed. The crowd upon the bridge became panic-stricken and unmanageable, and it does not appear that any personal or individual act of the defendants could have prevented such a result. The injury which the plaintiff received was caused by the surging crowd, and no personal act of the defendants has been shown to have been the proximate cause of it.

The trustees acting individually have no powers or functions. The act authorizing the appointment of the trustees provides that they shall have power to make all needful rules and regulations for the government of their board ; to appoint one of their number president, and also a secretary and treasurer, and such other officers and subordinates as may be necessary

Hannon v. Agnew.

for the performance of their duties (1875, chap. 300, § 6). The trustees are therefore to meet and act as a board, in which a majority of the trustees governs (*Angell & A. on Corp.* § 501) ; and in which the minority has no practical control. To hold the trustees of a public work, under such circumstances, personally and individually liable for acts such as the complaint charges, would entail a dangerous responsibility that few would be willing to assume. It would be responsiblity without control.

The trustees have no pecuniary interest in the bridge or its income. Their office is one of honor, without emolument. The title to the bridge is vested in the cities of New York and Brooklyn, and the income therefrom, is, by the terms of the act, to be applied toward the payment of the principal and interest of all bonds of the said cities in proportion to the amount issued by the said cities respectively. The office held by the trustees was created by the state, which by legislative enactment formed in effect a new district, composed of part of two cities, and directed the number of trustees who were to have the management and control of the bridge, which was declared to by a public work. The act provides the mode of appointment of the trustees, defined their powers and prescribed their duties. The act provides that the persons appointed, together with the mayors and comptrollers of said two cities, shall constitute the " Board of Trustees " of said bridge, so that in the performance of their duties the trustees are not to act on their individual judgment, but only after a concerted plan of action deliberately agreed upon at a regular meeting of the board, at which, after mutual consultation and advice, the majority is to determine what shall or shall not be done for the public good.

Under the circumstances, no personal, individual

liability attaches to the trustees for the acts imputed to them by the plaintiff.

No personal negligence has been proved against the superintendant, and he, being a public officer, is not liable for the negligent acts of the subordinates under his direction.

If the accident of which the plaintiff complains had happened upon a turnpike or bridge conducted by a private corporation for gain, a different question might arise; but, under the circumstances disclosed by the evidence, the defendants are not personally and individually liable, and the complaint must be dismissed.

'This decision was affirmed at the general term and afterwards by the common pleas, in and by the following opinion.

### Common Pleas—General Term—May, 1884.

DALY, Ch. J.; LARREMORE and BEACH, JJ.

PER CURIAM.—The plaintiff relies for her cause of action upon the alleged neglect of the board of trustees to discharge the duty imposed upon them by the act of 1875, "to appoint an adequate police force, and to regulate and direct the same, for the protection of the bridge and the travel upon it." The policemen were not appointed by the board of trustees, but by the superintendent.

It appears that the superintendent of the bridge was in consultation with the chairman of the board of trustees, who was also the chairman of the committee on permanent organization, and with Mr. Stranahan, who is described as an active member of the board; that among other matters relating to the bridge, the number and character of the policemen to be employed upon it was discussed between them and the superintendent; that the superintendent gave them his ideas; that there was an exchange of views; but that their directions governed, and he received orders from them as to the number of policemen, which he carried out by selecting the policemen and the captain. Whether this was or was not under the act a proper mode of discharging the duty imposed by it 'on the board of trustees of appointing an adequate police force it is not necessary in this case to decide, for there was nothing in the case to show that this irregularity in the appointment of the police force, if it was one, was the cause of the injury received by the plaintiff.

Hannon *v.* Agnew.

There was nothing in the evidence showing, or tending to show, that the injury was caused by the want, on the day of the accident, of an adequate police force on the bridge, or from the inefficiency of the policemen that were then there. For three days previously the number of persons crossing the bridge had been greater than on the day of the accident, and the number of policemen on duty on the bridge was the same. So far as the cause of the accident can be gathered from the evidence given on behalf of the plaintiff, it arose from the sudden rapid movement of a large body of people on the bridge toward the New York side. In the language of one of the witnesses, "A crowd was coming so strong from Brooklyn over against us that it shoved us round . . . every body coming from New York was turned round." And in the language of another, "They came on me just like you do that." The plaintiff and those accompanying her found a dense crowd in front of them, the pressure of which became very great, and was maintained until those in front of the pressing crowd were forced down the steps, and were injured and were trampled upon, as described in the evidence, indicating that the cause of the injury was, as I have said, a rapid movement resulting in a great pressure by a body of people moving in one direction—a calamity. which may occur from slight and unforeseen causes where a large number of people are collected together, and which is best expressed and understood by the word "panic."

So far as the evidence given indicates anything, it indicates that this was the cause of the accident, and there is nothing to show that this arose from the want of an adequate police force, or that it could have been prevented if there had been more policemen on the bridge. There is nothing more shown in the case except that after the accident the number of the police was increased from 44 to 92; but this does not establish that there was any negligence on the part of the board of trustees, or of the superintendent, in having a force of only 44 men for service on the bridge up to the time when the accident occurred.

The law, in its present application of the facts, is very clearly stated by Judge McADAM in the opinion delivered on dismissing the complaint. Nothing, it appears to us, can be added to what he has said, and the proper course is to affirm the judgment upon the opinions delivered in the court below.

Upon a further appeal the court of appeals affirmed the preceding decisions in the following opinion.

### N. Y. Court of Appeals.

LIZZIE HANNON, plaintiff and appellant, *against* JOHN T. AGNEW et al., defendants and respondents.

· The action was brought by the plaintiff to recover damages for injuries received by the plaintiff during the panic which occurred on the Brooklyn Bridge on Decoration day of 1883. Upon the trial in the city court, Judge McAdam dismissed the complaint, upon the ground that there was no evidence of negligence on the part of the trustees of the bridge, and that they were not liable, except for personal neglect. The opinion filed on dismissing the complaint was published in the *Daily Register* (November 21, 1883), and in the *Albany Law Journal* (volume 20, page 13). The judgment given at the trial term was affirmed at the general term, and subsequently by the common pleas, general term. (Opinion published in *Daily Register*, June 4, 1884.) Upon a further appeal to the court of appeals the following opinion was filed, affirming the lower courts :

EARL, J.—It is not claimed that the defendants can be made liable in this action for anything but their own personal negligence or omission of duty, and the only allegation against them is that " they were guilty of personal neglect of official duty, in failing and neglecting to appoint an adequate police force, and in failing and neglecting to regulate and direct the same, as prescribed and commanded by § 8, chap. 3, Laws of 1875." That section provides " that it shall be the duty of the said trustees to appoint, and they are hereby authorized to appoint, an adequate police force, and to regulate and direct the same, for the protection of the said bridge, and of the travel over the same, and of all persons, vehicles, railroad cars and animals using or passing over the same ; and the policemen appointed shall have and possess all the powers of policemen of the cities of New York and Brooklyn. The compensation of the said policemen shall be fixed by the said trustees, and shall be a charge against said bridge, and paid by said trustees." As the policemen were to some extent to be public officers, it was the duty of the trustees, as a body, at some legal meeting, to appoint them. The appointment could be made in some formal manner or by recognizing them in some way as policemen, after their selection by some other person. The trustees could not delegate their appointment to some subordinate officer connected with the bridge, so that their existence would be due solely to the action of such officer. We may assume that the forty-four policemen were appointed by Martin, the superintendent of the bridge, and hence that they were not legally appointed. But the injury to the plaintiff did not come from the fact that they were not legally appointed. For aught that appears, the police force was just as efficient as it would have been if there had been no flaw in its appointment. The policemen acted and performed duty as regular policemen, and the bridge would have been no safer for public travel if they had derived

Hannon v. Agnew.

their existence from some formal action of the board of trustees. The trustees are not responsible to the plaintiff for any omission of duty, unless that omission was the proximate cause of her injuries. For the purpose of this action, therefore, the forty-four policemen appointed by Martin, or by him after consultation with some of the trustees, must be held as regular policemen, authorized to do duty as such. The bridge was open to the public on the 24th day of May, and the accident happened on the 30th day of May, 1883. The trustees were without experience as to the management of the bridge and the exigencies that might arise in its use. They could not foresee, and no one could anticipate, such a calamity as occurred. On one of the days after the opening of the bridge 183,000 persons passed over it in safety, and on the other days before the day of the accident a larger number than passed over on that day, which was 87,000, crossed without harm. There was no evidence that the policemen on duty were not perfectly competent for the duties which devolved upon them, nor that they were not properly directed. There is no satisfactory evidence that twenty-two were not a sufficient number of policemen to be in attendance upon the bridge at one time. But, if the number was inadequate, there is nothing in the case which made it the duty of the trustees to know that it was inadequate, and charge them with negligence in not having a greater number there. With the experience they then had, it could not be said that they knew or might have known, that a larger number was required. The precise cause of the calamity on that day does not appear in the evidence. It seems to have been due to some accident or panic no human foresight could have anticipated or prevented. As against these defendants there was nothing whatever for submission to the jury. A more extended discussion now is not needed, as the opinions in the courts below are ample to justify the judgment rendered, which now should be affirmed.

All concur, except DANFORTH, J., absent.

*J. M. & W. M. Lyddy,* for plaintiff and appellant.

*A. J. Vanderpoel* and *Bergen & Dyckman,* for defendants and respondents.

Filed October 7, 1884.